EDWARD F. ARON ET AL., APPELLEES, V. MID-CONTINENT
COMPANY, APPELLANT.
4 N. W. (2d) 884

FILED JULY 17, 1942. No. 31334.

*Littrell & Patz,* for appellant.

*Ira D. Beynon* and *J. R. Dudgeon, contra.*

*Frank D. Eager, amicus curiæ.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

MESSMORE, J.

This is an action to rescind a contract for the purchase of capital stock, charging defendants with fraud. The jury returned a verdict against defendant Mid-Continent Company in the sum of $3,728.50. Motion for a new trial was overruled, judgment entered in accordance with the verdict, and the Mid-Continent Company (hereinafter referred to as defendant) appeals.

The petition sets forth certain evidentiary facts disclosing fraud practiced upon the plaintiffs, all of which is denied by defendant's answer.

The principal assignment of error is: The court erred in holding that the offer made by the plaintiffs on January 6, 1940, to return their stock certificate and one dividend check for $15, as pleaded in plaintiffs' petition, was a sufficient tender and pleading to support an action at law in rescission.

The plaintiffs' petition with reference to the tender is, in substance, as follows: That plaintiffs did not learn of the fraud practiced upon them by the defendant until some time after the 21st day of September, 1939, at which time a re-

ceiver for defendant was appointed; that plaintiffs were informed through counsel that an opportunity would be given them to file their claim in the receivership action, but, by stipulation of the officers of the company, the receiver was discharged December 16, 1939, "without leave for creditors to file claims;" that during the pendency of the receivership plaintiffs informed the receiver and his counsel of their demand for return of their money, and, upon the discharge of the receivership and return of the company to its officers, plaintiffs demanded of the officers a return of the funds invested by them for the stock; that on January 6, 1940, plaintiffs made a formal tender back to the defendant of the shares of stock that had been heretofore delivered to them by the defendant company, with a dividend check in the sum of $15, and at said time demanded payment of $3,000 (plaintiffs paid $3,000 for 300 shares of the capital stock of the defendant, the purchase being made as of May 7, 1937), which was refused and plaintiffs "now again tender back in court certificate No. 270 for 300 shares of the Mid-Continent Company together with check No. 4701 for $15 issued by said company on the 20th day of December, 1939, as a dividend; that the plaintiffs have thus elected to and have rescinded their subscription to the stock" of the defendant, and that by reason of the foregoing there is due from defendant to the plaintiffs the sum of $3,000, with interest at 6 per cent. from the 6th day of January, 1940 (the petition was later amended to include interest at 6 per cent. from May 11, 1937), which sums the defendant has entirely neglected and refused to pay. Plaintiffs pray judgment against the defendant in the sum of $3,000 with interest at 6 per cent. from the 11th day of May, 1937.

The amended separate answer of the defendant contains a general denial of the allegations of the plaintiffs' petition; admits the incorporation of defendant, and alleges that the plaintiffs at all times since the purchase of their stock have received and retained and are now receiving and retaining the regular *pro rata* monthly share of the distribution of the assets and earnings of said company; that plaintiffs have at

all times acquiesced in the management and operation of the company and made no objection concerning the same; that plaintiffs have ratified and confirmed their purchase and are now estopped. To simplify the discussion, we will hereinafter refer to the plaintiffs in the singular.

The error complained of is: (1) That, in order to support an action in rescission, the party attempting to rescind must do so *in toto* and offer to return all benefits received by him under the contract as a condition precedent to said action; (2) that the plaintiff did not offer to restore the parties to their relative positions which they would have occupied if no contract of purchase had been made. The facts in reference to the tender are, in substance, as follows:

The plaintiff purchased 300 shares of the capital stock of the defendant corporation on May 7, 1937. From that time until January 6, 1940, when the plaintiff gave notice of his election to rescind because of the alleged fraud, he received from the company under his contract $580; this amount constituted dividends. The plaintiff's offer was to return the certificate of stock, evidencing the 300 shares of stock of the value of $3,000 and the last dividend check received by him in the amount of $15, leaving a cash benefit in the plaintiff's possession of $565 received under the contract. Plaintiff's demand was for the return of $3,000 and interest, as hereinbefore stated. If the $3,000 had been returned, constituting the purchase price of the stock, plaintiff would then have had $3,565, the amount of his stock plus the dividends, minus the 15-dollar dividend which he offered to return. He prayed for interest at 6 per cent. on the $3,000 to January 6, 1940. The defendant's contention is that plaintiff would be entitled to $3,480, had his offer been accepted, thus leaving him $85 more than he would have a right to have, and consequently neither of the parties would be restored to their former positions; that the proper tender to be made on January 6, 1940, would be to return the certificate of stock, the $580 in dividends plus interest received under the contract, and then demand the payment of $3,000 with interest at 6 per cent. The evidence is undisputed that the plaintiff received 6 per cent.

return on the 3,000-dollar certificate of stock since the time of its purchase. Later, during trial, plaintiff tendered, in addition to the foregoing, the $565 in dividends. Objection was made to the tender, in part, as follows: "We object to the tender at this time: First, there is no sufficient and proper foundation laid for the same, and in an action for rescission as a condition precedent it is necessary that the party electing to rescind return or offer to return all that he has received under and by virtue of his contract before bringing any action; * * * The tender is further insufficient in that it is not all the plaintiff has received under and by virtue of his contract. The amount does not include any interest upon money which he had in his possession for over two years." This objection was overruled.

Before the plaintiff rested, a tender was made of the certificate of stock, of the dividends and the interest on the dividends in the sum of $103.84, and amounts constituting the same sufficient to make the defendant whole and place the parties *in statu quo*, or in the same position as before the contract was made and the purchase of the stock was consummated, except costs charged to or paid by defendant to the time of such tender. This tender was objected to for the reason that it was not made within a reasonable length of time; that no offer was made to return the sum of money represented by the check thus tendered on or prior to this date, May 27, 1941, or prior to the time of the filing of the lawsuit; and "The Mid-Continent Company was not given an opportunity to elect as to whether it would accept the same or not prior to the institution of the lawsuit." This objection was overruled. The question presented has never been directly passed upon by this court.

There is a distinction between rescission, as applied to a law action, and that designated as equitable rescission. In a law case, the rescission is by the act of the party and is a condition precedent to bringing an action at law for the recovery of the purchase price, whereas in equity the rescission is effected by the decree of the equity court which en--

tertains the action for the express purpose of rescinding the contract and rendering a decree granting such relief.

A court of law entertains an action for the recovery of possession of chattels or personal property after the party to the contract has pleaded the rescission thereof by his own act. The recovery in a law action is based on the fact of such rescission and could not have been granted unless the rescission had taken place. See 12 C. J. S. 945, sec. 5.

In a law action the plaintiff "must have the legal title to the thing sued for, if it be a chattel, or a legal right to the sum demanded, at the time of the institution of the suit. If he has parted with his property by reason of the fraud of * * * the seller, the legal title or right has passed out of him and into the other party. * * * Since the law permits him to reacquire this legal right, by his own act, it puts upon him the necessity of restitution of the thing received by him as a condition of the exercise of the right to avoid the contract." 9 C. J. 1215, note 89 (a).

The case of *Loomis v. Pease*, 234 Mass. 101, 125 N. E. 177, was based on rescission of a contract for purchase of stock. Plaintiff offered to return the stock before filing suit but did not offer to return the dividends received. In the body of the opinion the court said (p. 107):

"To recover under this count (rescission) the plaintiff must have disaffirmed the contract and restored to the defendant the benefits derived therefrom. He must have done everything within his power to return to the defendant the property received and restore him to the same condition as before the contract was made. Citing a number of decisions of the Massachusetts court.

"The ownership of the certificate carried with it the right to the dividends; and the offer to return the certificate while retaining the dividends was not a complete restoration of the benefits received and did not amount to a rescission of the contract."

In *Cummings v. Hotchkin Co.*, 292 Mass. 78, 197 N. E. 473, the plaintiff sought to recover the purchase price of stock. Prior to bringing suit, no offer was made to return

the dividends received. At the close of the evidence, upon motion, plaintiff was permitted to reopen the case and make a tender of the dividends. The court held such tender to be too late, in the opinion saying: "The plaintiff did not tender the whole or any part of the dividends received by him on the stock until after the case was reopened for that purpose." On page 81 the court said: "Every consideration of equity and fair dealing requires the plaintiff to return the stock and the profits realized on it to the defendant before seeking to recover from the defendant the price paid for the stock." On page 82 the court further said: "It is plain that no sufficient tender was made by the plaintiff, either before action was brought or at the conclusion of the evidence. * * * It did not put the parties *in statu quo*." Citing Massachusetts cases, including *Loomis v. Pease, supra*.

In *Americanized Finance Corporation v. Yarbrough*, 223 Ala. 266, 135 So. 448, in an action brought for money had and received, plaintiff sought to recover, on the ground of fraud, the purchase price of stock in defendant's company without tendering the dividends. The court held:

"Offer to rescind sale of stock for fraud *held* insufficient, where purchaser retained dividends but made offer of stock.

"Contract cannot be rescinded in part.

"Purchaser's failure to offer to return and keep good offer of stock and dividends received precluded recovery from corporation on theory of rescission."

The pertinent decisions in Nebraska follow: In *Building & Loan Ass'n of Dakota v. Cameron*, 48 Neb. 124, 66 N. W. 1109, the court said: "It has been often held, and may be regarded as elementary law, that one who seeks to rescind a contract on the ground of fraud must offer to return the property or consideration received therefor by him, provided it be of any value, within a reasonable time." Citing *Clark v. Tennant*, 5 Neb. 549; *Brown v. Waters*, 7 Neb. 424; *Babcock v. Purcupile*, 36 Neb. 417, 54 N. W. 675. The court held: "One who seeks to rescind a contract on the ground of fraud must, within a reasonable time, offer to return the property or consideration therefor received by him, provid-

ed it be of any value." And in the fourth paragraph of the syllabus it was held:

"The plaintiff, a subscriber to the stock of a foreign building and loan association, sued to recover money paid for such stock, alleging a rescission of his contract of subscription on account of the false and fraudulent representations of the defendant's agent. *Held*, in the absence of evidence to the contrary, that said stock is presumed to be of some value and its surrender is a condition precedent to the right to rescind."

The above holding would indicate that in a law action in this state a tender of the stock, if it has any value, must be made as a condition precedent to the bringing of an action. This would then be true with reference to dividends or interest accumulations on the stock. In the opinion (p. 126) the following quotation from *Snow v. Alley*, 144 Mass. 546, 11 N. E. 764, appears: "The right to rescind or avoid a contract proceeds upon the ground that a party has been fraudulently betrayed into making it, and, having thus been induced to part with his own property, may resume possession of it on returning that which he has himself received, and thus placing the other party in the same position that he was before the contract was made. * * * Where property is entirely worthless, it need not indeed be returned; but so strictly has this rule been held, that articles which are of the slightest value, or the loss of which may be a disadvantage in any way, must be returned, even if they have no intrinsic or no market value." And this court added: "The stock issued to the plaintiff and his fellow-subscribers is personal property * * * presumably of some value, and the surrender thereof, or an offer to surrender it to the defendant association, is an essential condition to the right to rescind." Citing several Massachusetts cases. The above Nebraska decision follows the decisions of the Massachusetts court in respect to tender of stock. It will be noted that this court in the syllabus used the language "Said stock is presumed to be of some value and its surrender is a condition precedent to the right to rescind."

In *Rasmussen v. Hungerford Potato Growers Ass'n*, 111 Neb. 58, 195 N. W. 469, the court held: "One who rescinds for fraud must act promptly upon discovery of the facts, announcing his intention to his adversary and returning what he has received. This should be done before he begins his action, nor should he fail to allege in his petition that he has so rescinded." In the opinion it was said (p. 62): "Immediately upon learning the facts he should announce to his adversary that he does not intend to be bound by the terms of the agreement made, and tender back what he has received under it. To maintain rescission at law, he must do this at or prior to the time of the commencement of his action. Due allegation of his acts of rescission should be made in the petition. *Alfree Mfg. Co. v. Grape*, 59 Neb. 777; *Pollock v. Smith*, 49 Neb. 864; *First Nat. Bank v. McKinney*, 47 Neb. 149; *American Bldg. & Loan Ass'n v. Rainbolt*, 48 Neb. 434; *Baker v. Thomas*, 102 Neb. 401; *First Nat. Bank v. Yocum*, 11 Neb. 328; *Symns & Co. v. Benner*, 31 Neb. 593."

Plaintiff cites *Collins v. Hughes & Riddle*, 134 Neb. 380, 278 N. W. 888, which was an action at law to recover damages for personal injuries received by the plaintiff on account of an automobile accident. The defendant's answer pleaded that negotiations were entered into between the parties for a compromise settlement, in the amount of $15, which was made. The verdict was for $15,000. The trial court directed a remittitur of $10,000. The cause was reversed on account of the excessive verdict. The court held, with reference to the settlement, as follows:

" 'An exception to the rule requiring the restoration of the consideration as a condition precedent to rescission exists in those cases in which the party rescinding would be entitled to retain the money or property received, even though the compromise be set aside * * * . An offer to return is also unnecessary if the judgment asked for will accomplish that result, or where plaintiff is not suing to rescind the new agreement, but his action is on his original demand.' 12 C. J. 356."

We have examined this authority, and Restatement, Con-

tracts, sec. 480, as cited by the plaintiff, to determine whether or not the plaintiff's contention that the tender made in the instant case comes within the exception. It is obvious that a different situation exists in *Collins v. Hughes & Riddle, supra,* from that in the case at bar. The settlement in the former case was for the complete adjudication of an action for damages. The instant case is one in rescission originally, to repudiate the purchase of stock, wherein the purchase was induced by fraud. We have set forth the authorities governing this situation, and, from an analysis thereof, have stated the rule to be applied in rescission. The instant case is definitely not one in which the exception contended for may be applied.

Plaintiff cites *Langdon v. Loup River Public Power District,* 139 Neb. 296, 297 N. W. 557, an action in equity for rescission, wherein this court held: "The failure to return or offer to return the consideration will not preclude relief, where the consideration is merely money paid, the amount of which can be credited in partial cancelation of the injured party's claim, and where it is patent that a tender, if made, would be rejected, an equity court having jurisdiction to award relief to both the plaintiff and defendant, and to specify the conditions under which relief will be granted." The foregoing case presents a distinctively different proposition, with reference to tender, than in the case at bar.

Plaintiff also cites the rule regarding tender in 6 R. C. L. 936, sec. 319, as follows: "The whole doctrine of refund upon repudiation of a contract of settlement is not technical, but equitable, and requires merely that the practical rights of the other party shall not thereby be prejudiced; that he shall be no worse off than if he had never made the contract of settlement."

Plaintiff cites several cases, and certain language from the case of *Prime v. Squier,* 113 Neb. 507, 203 N. W. 582, wherein the proper tender of the stock and dividends was made. The court said: "Plaintiff did not manually offer the certificate to the defendant and did not produce and hand

him any money. * * * This court has many times held that under similar circumstances such a tender was sufficient, it being unnecessary to press the thing tendered upon a party when the party declares that he will not receive it. And in all of the Nebraska Building & Loan Association cases, practically without exception, though the dividends were not produced and tendered back, it was held by the court that such tender was not required. That which the attitude of the party to whom tender is due unmistakably shows to be vain and useless may be dispensed with in rescission cases of this kind."

In 9 C. J. 1215, it is said: "The courts of many states have held, in numerous well considered cases, that no offer of restoration before bringing suit is necessary. And this rule is not affected by the provisions of the codes of procedure. In the opinions in many of those cases the courts advert to the distinction, so often lost sight of, between the equitable remedy of rescission or cancelation, where the avoidance of the contract, with its indispensable adjunct of restoration, is accomplished by the decree of the court, and legal rescission, where the act of plaintiff in avoiding the contract reinvests him with his legal title or right to sue, and must therefore be accompanied with restitution of the thing received by him. In estimating the comparative value of the conflicting rules on the subject the fact should not be overlooked that the decisions opposed to the rule laid down in this section show on a careful reading that the courts rendering them did not have their attention directed to this distinction between the legal and equitable aspects of rescission."

The instant case is a law action to rescind a contract for the purchase of capital stock wherein the plaintiff was induced to purchase the stock by the alleged fraud of the defendant. The rule announced in Nebraska cases has been heretofore stated in the opinion.

This court held in *Alfree Mfg. Co. v. Grape*, 59 Neb. 777, 82 N. W. 11: "A contract cannot be rescinded in part and a part remain executed. If rescinded at all, it must be *in toto*, and the parties thereto placed *in statu quo* so far as the cir-

cumstances will permit." And in *Symns & Co. v. Benner*, 31 Neb. 593, 48 N. W. 472, the court held: "The general rule is that a party who seeks to rescind a contract entered into on fraudulent representation must return or offer to return the property acquired by such contract within a reasonable time, so as to place the property and the adverse party substantially in the same condition as at the time the property was received."

The rescission in the instant case did not comply with the rules of law governing the same, was incomplete, and, as finally made, was not within a reasonable time after the discovery of the fraud. The cases cited by the defendant are, primarily, equitable actions in rescission. Under the circumstances, discussion of other assignments of error is not required.

The defendant's assignment of error is well taken. The judgment of the trial court is reversed and the cause dismissed.

REVERSED AND DISMISSED.