ADVANCE-RUMELY THRESHER COMPANY, APPELLANT, V. FRED BARTZAT, APPELLEE.

FILED NOVEMBER 18, 1925.    No. 23352.

1. **Vendor and Purchaser:** FALSE REPRESENTATIONS: QUESTION FOR JURY. It is within the province of the jury to determine from the evidence whether the facts and circumstances are established which show that a buyer was justified in relying on the representations made by a seller and whether such representations were made to induce the sale, or the exchange of properties, as the case may be. *Sanders v. Nightengale*, 109 Neb. 667.

2. **Contracts:** RESCISSION. "It has been often held, and may be regarded as elementary law, that one who seeks to rescind a contract on the ground of fraud must offer to return the property or consideration received therefor by him, provided it be of any value, within a reasonable time." *Building & Loan Ass'n v. Cameron*, 48 Neb. 124.

3. **Principal and Agent:** AUTHORITY OF AGENT. "A principal is bound by the acts of his agent to the extent of the apparent authority conferred on him." *Webster v. Wray*, 17 Neb. 579.

4. ————: ————: WAIVER. "An agent, who made the contract for the sale of an engine for his principal, must be held to have had authority to subsequently waive a provision of the written contract." *Fairbanks, Morse & Co. v. Nelson*, 217 Fed. 218.

5. **Sales:** WAIVER. "A written contract may be waived in whole or in part, either directly or inferentially, and the waiver may be proved by express declarations manifesting the intent not to claim the advantage, or by so neglecting and failing to act as to induce the belief that it was the intention to waive." *Fairbanks, Morse & Co. v. Nelson*, 217 Fed. 218.

6. **Verdict:** SUFFICIENCY OF EVIDENCE. An examination of the evidence discloses that the verdict is clearly supported thereby, and it will not therefore be disturbed.

7. **Appeal:** REVIEW. Reversible error cannot be predicated upon the giving of instructions, and the refusal to give tendered in-

structions in respect of material evidence, where the verdict of the jury is the only one which should have been returned under the testimony.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*Good & Good* and *A. W. Richardson,* for appellant.

*D. J. Flaherty* and *Roy F. Gilkeson, contra.*

Heard before MORRISSEY, C. J., DEAN, DAY, GOOD, THOMP-SON and EBERLY, JJ.

DEAN, J.

Plaintiff is a manufacturer and vendor of tractors, farm implements, and machinery, and maintains a branch agency at Lincoln. Defendant is a farmer and thresherman of 20 years' experience and resides a few miles out of Lincoln. He bought a second-hand, rebuilt farm tractor from plaintiff, which is described as a "15-30 gas pull engine," for which he executed a contract and four certain promissory notes for $200 each, bearing 8 per cent. yearly interest until due and 10 per cent. thereafter. Defendant alleged failure of consideration, and also that the notes were fraudulently obtained, and therefore, as alleged, he refused payment. In an action on the contract and notes, defendant recovered a verdict, and judgment thereon. Upon being nonsuited plaintiff appealed.

Thomas Helehan has been a salesman and agent in the employ of plaintiff for many years. From his evidence it appears that he "started the tractor for him (defendant), ran it around * * * for three or four blocks," in Lincoln, defendant following along behind, and that, the tractor demonstration ending at the fourth city block, defendant announced his satisfaction, and informed the agent that the tractor suited him and thereupon signed and delivered the contract and the notes sued on, to plaintiff's agents at its Lincoln office.

Advance-Rumely Thresher Co. v. Bartzat.

Plaintiff, aside from its denial of the material evidence of defendant, relied on its printed form contract, and a type-written insertion of an alleged waiver of warranty by defendant therein. The argument is that the transaction between the parties became and was a closed incident when the sale was made and the contract and the notes signed. It may be here noted, however, that plaintiff's reliance was more particularly based on the typewritten recital, above referred to, which was inserted in the body of the contract and which reads:

"This is a second-hand tractor and is sold as such without warranty, as it stands at Lincoln, Nebraska."

Defendant, however, testified that plaintiff's agents, on some pretext, retained both duplicates of the contract, and that his copy subsequently came to him by mail, and not until then did he discover the insertion of the two lines of typewritten words therein, of which he now complains, and he contends that all except the words, "This is a second-hand tractor," were inserted by some person after his signature was affixed thereto and wholly without his knowledge or consent. Plaintiff denied this imputation of unfair dealing, and insists that defendant's copy of the contract was then and there handed to him and that it was never again in its possession.

On the part of defendant, evidence was submitted which tends to prove that plaintiff's agents made to him certain oral representations which were material and upon which he relied, and that in reliance thereon he was induced to purchase the tractor and to execute the contract and the notes in suit. Among such representations, so made, it seems that the tractor, made by a corporation other than plaintiff, though a rebuilt machine, was nevertheless represented by the company's authorized Lincoln agents to be in good working order, and it was orally guaranteed by them to have sufficient power, first, to pull a grain separator from place to place on the public highway, and, second, to run a grain separator in the threshing season, and third, that the company would have on hand at its Lincoln agency

such repairs as were reasonably necessary to replace such breakages in the machine as might reasonably be expected to occur in this class of power machinery. And on this feature of the case there is competent evidence which tends to establish defendant's contention that the foregoing material representations, guaranties, and promises, so made by plaintiff's agents, were all unfulfilled, and that they were "breached" by the company in every material respect. We have uniformly held to the proposition that it is within the province of the jury to determine from the evidence whether the facts and circumstances are established which show that a buyer was justified in relying on the representations made by a seller and whether such representations were made to induce the sale or the exchange of properties, as the case may be. *Sanders v. Nightengale,* 109 Neb. 667. See, also, *Realty Investment Co. v. Shafer,* 91 Neb. 798.

That the tractor utterly failed to do the work for which it was made and for which it was purchased seems to have been well established and to the jury's satisfaction. Only a few instances out of many will be noted which tend to show its material defects. When defendant started away from plaintiff's branch agency to take the tractor to his farm home, under its own power, when a half mile from Lincoln, "it had some machinery break on it" and had to be returned to Lincoln for repairs, according to defendant's evidence. That the tractor did not have power to move a separator on the highway nor to run a grain separator was a material fact established by the evidence. When breakages occurred, as frequently happened, plaintiff did not have the needed repairs on hand at Lincoln. In one instance there was a delay of about a week and in another of more than two weeks before repairs for the defective broken part could be obtained, and those happenings occurred from time to time while defendant was engaged in small grain threshing for his patrons, and to such an extent that he was compelled to hire another engine. And, besides, his occupation as a thresherman was shown to have been practically destroyed for the fall threshing season, at great

loss, because of the vitally material defects in the engine. And there were other like instances, in which even much greater time was consumed by plaintiff in getting needed repairs, which need not be referred to herein. It need hardly be urged that defendant, as a thresherman, required a reasonably efficient power tractor, but the evidence, on defendant's part, tends to prove that it was worthless for any purpose, and the jury were justified by the evidence in so believing.

Defendant cites, and seems to have relied on, section 8384, Comp. St. 1922, which provides:

"That every person, firm, association and corporation, or their agent, distributor, or dealer, who is engaged in the sale, trade or exchange of automobiles or tractors within this state shall carry in stock, at some point within the state, all necessary supplies and repairs for such makes of automobiles or tractors as are sold by them within the state. That each and every sale, trade or disposition of any automobile or tractor by any such person, firm, association and corporation, or their agent, distributor or dealer, shall be void unless such stock of supplies and repairs are kept within this state, as herein provided."

Plaintiff concedes that the foregoing act is both wholesome and beneficial and is well designed to protect the public from the imposition of manufacturers of new machinery, but that it cannot properly be applied to "a *bona fide* sale of a second-hand machine, which as a new machine has once before been sold in all respects within the provisions of the law." Plaintiff, however, contends also that the act is not in harmony with the Constitution, and that it is therefore void. But we do not find it necessary to pass on the constitutionality of the act, for the reason that the act in question is not necessarily involved here. The jury found, from the evidence, that plaintiff had no cause of action against defendant, and in view of the record before us we do not hesitate to say that the verdict finds ample support in the evidence in respect to every material fact involved here.

It seems that the tractor, at the time of the trial, was at or in the vicinity of the farm where it last broke down, in a final but vain attempt to function as a furnisher of power for defendant's threshing machine. Defendant testified that he notified plaintiff's agents that he exercised no dominion over it and that the tractor, for the reasons herein stated, was theirs, but they refused to take it back.

Plaintiff argues that, "in legal effect one of his (defendant's) defenses was rescission because of the fraud practiced upon him at the time he purchased the tractor and signed the notes on which this action is founded," and that such defense "cannot be maintained unless a tender back of the machinery is alleged and proved, unless such machinery is worthless for any purpose, or the conduct of the seller renders such tender unnecessary." And both defenses, so pointed out by plaintiff, seem to have met in this action. The proof, as herein noted, shows that the "machinery is worthless for any purpose," and that "the conduct of the seller" rendered "a tender back" unnecessary.

We think the present case comes fairly within the rule announced in *Building & Loan Ass'n v. Cameron,* 48 Neb. 124, in an opinion by Post, C. J., wherein this is said: "It has been often held, and may be regarded as elementary law, that one who seeks to rescind a contract on the ground of fraud must offer to return the property or consideration received therefor by him, provided it be of any value, within a reasonable time." See, also, *Murray v. Bailey,* 110 Neb. 114.

A great deal of acrimonious evidence was introduced by the parties in respect of the contention as to the time when the added words were inserted in the contract. But in view of our conclusion, even though the language complained of had been in the contract when it was signed, which we do not find it necessary to decide, we would not deem this feature of controlling importance. *First Nat. Bank v. Dutcher,* 128 Ia. 413. In an early opinion by Maxwell, J., we announced the rule, even then long familiar: "A principal is bound by the acts of his agent to the extent of the

apparent authority conferred on him." *Webster v. Wray,* 17 Neb. 579.    And in a comparatively recent case in a federal court it was held that an agent, who made a contract for the sale of a certain machine for his principal, "must be held to have had authority to subsequently waive a provision of the written contract." *Fairbanks, Morse & Co. v. Nelson,* 217 Fed. 218.    At page 223, the court used this language and cited authorities in support thereof:

"Error is assigned to the ruling that it was admissible to prove the acts of plaintiff's agents, who visited the defendant's ranch.    It is urged that such evidence should have been excluded, for the reason that there was no proof of the authority of the agents to bind the plaintiff.    But the evidence indicated that the plaintiff did not disavow the acts of its agents, but ratified the same, and that it supplied without cost to the defendant the extensions to the wheels which one of the agents suggested as a remedy for the defective action of the engine.    It further appears that one of those agents had acted for the plaintiff in making the sale of the engine to the defendant, and that he signed the contract for the plaintiff.    In *Advance Thresher Co. v. Vinckel,* 84 Neb. 429, the court said:  'To say that its agents were vested with the mere naked power to sell and deliver, without any authority to waive or modify any term of the printed contract, would be, as is well said in *Pitsinowsky v. Beardsley, Hill & Co.,* 37 Ia. 9, "to establish a snare by which to entrap the unwary, and enable principals to reap the benefits flowing from the conduct of an agent in the transaction of business intrusted to his hands, without incurring any of the responsibilities connected therewith." ' "

The case before us seems fairly to come within the rule which was applied in the above cited cases.    It does not appear that plaintiff here disavowed any of the acts of its agents.    And here, as in the *Fairbanks* case, it appears that experts were sent from the Lincoln agency to put in certain repairs for a broken part and that this was done without any expense to defendant but solely at the expense of the plaintiff company.    And, as in the *Fairbanks* case,

the agents herein acted solely for plaintiff in making the sale to defendant. The rule in the *Fairbanks* case, and in cases there cited, is clearly applicable here.

It is perhaps proper to note that defendant seems, from his broken speech, and his manner of testifying, to have an imperfect knowledge of the English language, and in many respects it has been found somewhat difficult to get his meaning, and this from the fact that he did not apparently seem to understand his questioner. We think, however, that we have fairly reflected his evidence in respect of material matter, notwithstanding his evidence in part appeared to be confused and in part contradictory.

Plaintiff contends that the court erred in the giving of certain instructions of its own motion and in refusing to give others tendered by it. We do not think so. Upon examination of the instructions given and those refused, we conclude that reversible error cannot be predicated upon this assignment, since the verdict of the jury is the only one which should have been returned under the testimony. *Babcock v. Purcupile,* 36 Neb. 417.

Prejudicial error has not been made to appear in the record. The judgment is therefore

AFFIRMED.

GOOD, J., dissents.